**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

THE BOARD OF EDUCATION
OF THE COUNTY OF BOONE,
WEST VIRGINIA,

          Plaintiff,

v.                                   CIVIL ACTION NO.   2:14-cv-10563

K.M., et al.,

          Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court are Plaintiff's motion to stay the enforcement of an administrative decision [ECF 6] and Plaintiff's motion to dismiss [ECF 14].

*I. BACKGROUND*

Defendant K.M. has been identified as a child with disabilities. He attends public school in Boone County, West Virginia. This case concerns whether his school has provided him with a free and appropriate public education, as required by the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §1400 *et seq*.

On May 14, 2013, K.M.'s parents, Defendants Kevin M. and Angelique M. filed a due process complaint against Plaintiff, the Board of Education of the County of Boone, West Virginia ("the Board of Education"), pursuant to the IDEA, 20 U.S.C. § 1415(b)(6), claiming that the Board of Education failed to offer K.M. a free and appropriate public education. An impartial due process hearing was held over October 7 to 9, 2013, pursuant to 20 U.S.C. §

1415(f).   The hearing officer's decision was issued on December 6, 2013.   Defendants

prevailed.   The Board of Education was ordered to contract with private educational service

provider Bright Futures Learning Services ( "BFLS") within five days of the date of the decision

(1) to provide training for K.M., his parents, and school district personnel in the use of a

speech-generating device ("SGD") and (2) to develop and implement an Applied Behavior

Analysis ("ABA") educational program for K.M.

On January 21, 2014, Defendants informed the Board of Education that it was in

violation of the hearing officer's decision because the Board of Education had not yet contracted

with BFLS as ordered by the hearing officer.   Defendants further informed the Board of

Education that they would transport K.M. to BFLS to begin receiving the services ordered in the

due process hearing officer's decision.   On February 3, 2014, K.M. began receiving the ordered

ABA services from BFLS, even though the Board of Education had not contracted with BFLS as

ordered.

On February 10, 2014, the Board of Education filed this action in the Circuit Court of

Boone County appealing the decision of the hearing officer, pursuant to 20 U.S.C. § 1415(i)(2).

On February 18, 2014, Defendants removed the action to this Court based on federal question

jurisdiction.   On March 3, 2014, Defendants filed their Answer to the Complaint, along with

Counterclaims asserting actions for the award of damages under Section 504 of the

Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794, and the Americans with

Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*.   Defendants also asserted a claim under

the IDEA, 20 U.S.C. § 1400 *et seq.*, for an injunction ordering the Board of Education to comply

with the decision of the hearing officer.

On March 6, 2014, the Board of Education filed the present motion to stay the enforcement of the administrative decision.   (ECF 6.)   On April 7, 2014, the Board of Education filed the present motion to dismiss Defendants' counterclaims.   (ECF 14.)   These motions have been fully briefed and are now ripe for the Court's consideration.

## II. MOTION FOR STAY

The Board of Education requests a stay of the enforcement of the hearing officer's decision during the pendency of the appeal of that decision before this Court, pursuant to Rule 62(c) of the Federal Rules of Civil Procedure.

Defendants argue that the stay request is an attempted "end run" around what is commonly referred to as the IDEA's "stay put" provision.   That provision provides that the child "shall remain" in his or her "then-current educational placement" during the pendency of any proceedings conducted pursuant to the IDEA, unless the State or local educational agency and the parents otherwise agree.   20 U.S.C. § 1415(j).   The "stay put" provision functions as an automatic injunction; the usual requirements for obtaining preliminary injunctive relief do not apply.   *Wagner v. Bd. of Educ. of Montgomery Cnty.*, 335 F.3d 297, 301 (4th Cir. 2003).   If a party seeks relief under § 1415(j), "a district court should simply determine the child's then-current educational placement and enter an order maintaining the child in that placement." *Id.*

The IDEA's "stay put" provision is often invoked by a child's parents in order to maintain a placement where the parents disagree with a change proposed by the school district; the provision is used to block school districts from effecting unilateral change in a child's

3

educational program.   *Susquenita Sch. Dist. v. Raelee S.*, 96 F.3d 78, 83 (3d Cir. 1996).[1]   Here,

the Board of Education does not seek to remove K.M. from public school or to change K.M.'s

educational regimen there.   Nor does it seek to prevent K.M. from receiving further educational

services from BFLS.   Rather, the Board of Education seeks not to be required to pay for those

services.

However, the IDEA's "stay put" provision is also invoked by parents who advocate

change in situations similar to this one.   § 1415(j) does not expressly require school districts to

fund private placements when a hearing officer has found in favor of the parents and the matter

is under review by a state or federal court.   Nevertheless, under what appears to be the widely

accepted reading of § 1415(j), "once parents receive a state administrative decision that the

offered public placement was inadequate and their unilateral private placement was appropriate,

the private placement becomes the 'current educational placement,' and the school system is

financially responsible for the cost of that placement during the pendency of the underlying

litigation."   *Bd. of Educ. of Montgomery Cnty. v. Brett Y.*, 959 F. Supp. 705, 710 (D. Md. 1997).

*Accord Bd. of Educ. of Pawling Cent. Sch. Dist. v. Schutz*, 290 F.3d 476, 484 (2d Cir. 2002);

*Susquenita*, 96 F.3d at 83; *Clovis Unified Sch. Dist. v. Cal. Office of Admin. Hearings*, 903 F.2d

635, 641 (9th Cir. 1990); *Cnty. Sch. Bd. of Henrico Cnty., Va. v. RT*, 433 F. Supp. 2d 692, 713

(E.D. Va. 2006); *Bd. of Educ. of Oak Park & River Forest High Sch. Dist. No. 200 v. Ill. State

Bd. of Educ.*, 10 F. Supp. 2d 971, 977 (N.D. Ill. 1998) ("To hold otherwise would mean that

---

[1]   "In the typical section 1415(j) case, the school board is attempting to remove the child, whether through expulsion or by other means, from his or her current placement and the parents are seeking to stop that action." *Wagner*, 335 F.3d at 300.   In such a case, § 1415(j) "guarantees an injunction that prohibits a school board from removing the child from his or her current placement during the pendency of the proceedings." *Id.* at 301.   *Accord Honig v. Doe*, 484 U.S. 305, 306 (1988) ("The 'stay-put' provision prohibits state or local school authorities from unilaterally excluding disabled children from the classroom . . . during the pendency of review proceedings.").

parents who could not afford a private placement would be forced to maintain their child in a public placement that an administrative decision held to be inappropriate.").

The Court agrees with Defendants that the stay which the Board of Education requests here runs afoul of § 1415(j), and the motion will be **DENIED**.[2]

### III. MOTION TO DISMISS

First, the Board of Education argues that Defendants lack standing to bring the causes of action alleged in the Counterclaim because they have not exhausted their administrative remedies under the IDEA. "Congress created a detailed administrative scheme for aggrieved parents to pursue and exhaust prior to filing a federal claim." *Doe v. Alfred*, 906 F. Supp. 1092, 1096 (S.D.W. Va. 1995). The IDEA "mandates certain procedural requirements for participating state and local educational agencies"; in particular, it "guarantees to parents the right to participate in the development of an 'individualized education program' (IEP) for their handicapped child, and to challenge the appropriateness of their child's IEP in an administrative hearing with subsequent judicial review." *Dellmuth v. Muth*, 491 U.S. 223, 225 (1989).

---

[2] Even if § 1415(j) did not dictate this outcome, the Court would find that the Board of Education has failed to meet its burden under Rule 62(c) of the Federal Rules of Civil Procedure. When faced with a motion for an injunction pending appeal under Rule 62(c), a court must weigh four factors: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). The Board of Education argues that factors (1) and (4) weigh in its favor because the hearing officer misapplied the law. However, the Court is not prepared at this time to find that the Board of Education has a made a strong showing that it is likely to succeed on the merits. As to factor (2), the Board of Education argues that it will suffer irreparable injury because implementation of the hearing officer's decision would force it to expend public funds without the ability to recoup those funds. Yet this is no different from the position in which other school districts find themselves when an administrative decision requires school districts to fund private placements, and § 1415(j) prevents the school districts from failing to do so. As to factor (3), the Board of Education argues that K.M. would not be harmed, as K.M. would continue to progress under the individualized education program currently in place at the school district. This argument is essentially another iteration of the argument that the hearing officer's decision was wrong on the merits, in this case as to whether K.M. was in fact provided a free appropriate public education. The Court is not prepared to find so at this time and also notes that, if the Board of Education does not pay for BFLS's services as ordered, there is a risk that the education program ordered by the hearing officer and currently undertaken by K.M. will be interrupted.

Under § 1415(f), when a complaint has been received under subsection § 1415(b)(6), the parents or the local educational agency involved in such complaint shall have an opportunity for an impartial due process hearing.   The IDEA's administrative proceeding concludes with the hearing officer's decision.   *See* 20 U.S.C. § 1415(i)(A) (a decision made in a hearing conducted pursuant to 20 U.S.C. § 1415(f) "shall be final").   Thereafter, "[a]ny party aggrieved by the findings and decision made [during the administrative hearing] shall have the right to bring a civil action" in a state or federal court.   20 U.S.C. § 1415(i)(2)(A).[3]   Here, the parties appear fully to have run the IDEA's administrative gauntlet.

The Board of Education points out that on February 26, 2014, Defendants filed a State complaint with the Office of Special Programs of the West Virginia Department of Education regarding the Board of Education's alleged violations of the hearing officer's final decision. The Board of Education asserts that Defendants' counterclaims are an attempt to "short circuit the administrative process."   (ECF 15 at 6.)   However, although the Board of Education argues that the State complaint will "provide the Defendants with an additional administrative outlet" (*Id.* at 10), there is no indication here that Defendants' State complaint was filed pursuant to the IDEA's administrative scheme.   Nor have Defendants argued with any clarity why the IDEA

---

[3] Some states use a two-tiered administrative process, requiring that parties exhaust both administrative levels before filing suit in court.   *See* 20 U.S.C. §§ 1415(f) (an impartial due process hearing "shall be conducted by the State educational agency *or by the local educational agency, as determined by State law or by the State educational agency*"); §1415(g)(1) ("[i]f the hearing required by subsection (f) is conducted by a local educational agency, any party aggrieved by the findings and decision rendered in such a hearing may appeal such findings and decision to the State educational agency"); §1415(g)(2) ("[t]he State educational agency shall conduct an impartial review of the findings and decision appealed under paragraph (1)"); § 1415(i)(A) ("[a] decision made in a hearing conducted pursuant to subsection (f) . . . shall be final, *except that any party involved in such hearing may appeal such decision under [§1415(g)(2)]*"); §1415(i)(2)(A) ("[a]ny party aggrieved by the findings and decision made under subsection (f) . . . *who does not have the right to an appeal under [§1415 (g)]*, and any party aggrieved by the findings and decision made under this subsection, shall have the right to bring a civil action").   West Virginia's Policy 2419 establishes a single-tier administrative process for IDEA due process cases.   Here the due process complaint proceeding was conducted before the Office of Special Programs of the West Virginia Department of Education, a state agency.   (*See* ECF 2-1 at 2.)

would require Defendants to engage in a second round of administrative proceedings before bringing the counterclaims pending in this Court.

To the extent that the IDEA's exhaustion requirement may apply to Defendants' Section 504 and ADA counterclaims,[4] Defendants assert (and the Board of Education does not contest) that Defendants specifically raised their Section 504 claims and alleged facts supporting both Section 504 and ADA claims (deliberate indifference) in their IDEA due process complaint, but the due process officer declined to consider Defendants' Section 504 claim. (ECF 17 at 14.) At the due process hearing, the hearing officer stated "I don't really rule on 504 issues." (ECF 17-4 at 8–9.) It does not appear that any further exhaustion of this issue would have been possible under the IDEA's administrative scheme.[5]

Next, the Board of Education argues that Defendants lack standing to bring the counterclaims because they are not an "aggrieved party" within the meaning of § 1415(i)(2)(A), since they prevailed before the administrative hearing officer. (ECF 18 at 8.) The Board of Education also argues that its "right of appeal" under § 1415(i)(2)(A) has "not yet been

---

[4] § 1415(l) of the IDEA provides:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42 U.S.C.A. § 12101 et seq.], title V of the Rehabilitation Act of 1973 [29 U.S.C.A. § 791 et seq.], or other Federal laws protecting the rights of children with disabilities, *except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter.*

20 U.S.C. § 1415(l) (emphasis added). Courts have been divided as to whether parents of children covered under the IDEA as well as Section 504 and the ADA must exhaust IDEA's procedures for Section 504 and ADA claims seeking money damages, in part because money damages are not available under the IDEA. *See* Peter J. Maher, Note, *Caution on Exhaustion: The Courts' Misinterpretation of the Idea's Exhaustion Requirement for Claims Brought by Students Covered by Section 504 of the Rehabilitation Act and the ADA but Not by the Idea*, 44 CONN. L. REV. 259, 278–80 (2011). Some courts in this circuit have held that exhaustion is required in such a case. *See Wright v. Carroll Cnty. Bd. of Educ.*, No. 11-CV-3103, 2012 WL 1901380, at *8 (D. Md. May 24, 2012); *N.T. v. Balt. City Bd. of Sch. Comm'rs*, No. CIV. JKB-11-356, 2011 WL 3747751, at *1 (D. Md. Aug. 23, 2011).

[5] Alternatively, any failure to exhaust Defendants' Section 504 and ADA claims may be excused as futile.

exhausted." (ECF 18 at 9.) These arguments appear to be based on a misunderstanding of the nature of this civil proceeding. "[A]n IDEA action filed in federal district court is properly characterized as an original 'civil action,' not an 'appeal.'" *Jonathan H. v. The Souderton Area Sch. Dist.*, 562 F.3d 527, 529 (3d Cir. 2009). "Because a case brought pursuant to the IDEA is an original civil action rather than an appeal, it is governed by the Federal Rules of Civil Procedure." *Id.* "Pursuant to the Federal Rules of Civil Procedure, civil actions are initiated by a complaint and the responsive pleading is an answer, counterclaim, or motion to dismiss." *Id.* Counterclaims may be asserted when a party brings an IDEA action in federal court. *See Ruben A. v. El Paso Indep. Sch. Dist.*, 414 F. App'x 704, 706 (5th Cir. 2011) (holding that counterclaim to IDEA action was not time-barred); *Jonathan H.*, 562 F.3d at 529 (same)*; Kirkpatrick v. Lenoir Cnty. Bd. of Educ.*, 216 F.3d 380, 387 (4th Cir. 2000) (same). Defendants' assertion of counterclaims is proper here under the Federal Rules of Civil Procedure.

The Board of Education also argues that Defendants are not entitled to recover monetary damages for IDEA violations. The Board of Education's reliance on the rule that parents may not seek damages pursuant to 42 U.S.C. § 1983 for IDEA violations, *see Sellers by Sellers v. Sch. Bd. of City of Mannassas, Va.*, 141 F.3d 524, 528 (4th Cir. 1998), is misplaced. Here, Defendants' IDEA counterclaim seeks only injunctive relief, not monetary damages. As to Defendants' claims under Section 504 and the ADA, they are not barred by the IDEA. The IDEA's § 1415(l) provides:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, *the Americans with Disabilities Act of 1990* [42 U.S.C.A. § 12101 et seq.], *title V of the Rehabilitation Act of 1973* [29 U.S.C.A. § 791 et seq.], or other Federal laws protecting the

8

rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415(l) (emphasis added).   "Unlike the IDEA, compensatory damages may be awarded for violations of Section 504 of the Rehabilitation Act and Title II of the ADA."   Nor is this an "end run" around the IDEA, as the Board of Education argues.   (ECF 15 at 11.)   A plaintiff seeking to recover under Section 504 and the ADA must show more than a mere violation of the IDEA.[6]

Finally, the Board of Education argues that Defendants' counterclaims for monetary damages under Section 504 and the ADA are moot, because the Board of Education has been "providing every form of relief Defendants demanded pending its appeal" (ECF 15 at 7) and has been "providing K.M. with the SGD and the ABA services the [hearing officer] ordered" (*Id.* at 10).   In support of this argument, the Board of Education cites Defendants' Counterclaim. However, while Defendants' Counterclaim alleges that the Board of Education has delivered the SGD and has made payments on invoices submitted to BFLS for SGD training services, it also alleges that the Board of Education has refused to contract for those services, notwithstanding

---

[6]   In general, a plaintiff seeking recovery for violation of either statute must allege that (1) she has a disability, (2) she is otherwise qualified to receive the benefits of a public service, program, or activity, and (3) she was excluded from participation in or denied the benefits of such service, program, or activity, or otherwise discriminated against, on the basis of her disability." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474 (4th Cir. 2005). Further, "[a] plaintiff seeking relief under Title II of the ADA must prove that disability 'played a motivating role' in the adverse action, while a plaintiff seeking relief under § 504 of the Rehabilitation Act must prove that the defendants' discriminatory conduct was 'solely by reason' of plaintiff's disability." *Id.* at 498 n.17 (quoting *Baird v. Rose*, 192 F.3d 462, 469–70 (4th Cir. 1999)).   "To prove discrimination in the education context, something more than a mere failure to provide the 'free appropriate education' required by [IDEA] must be shown." *Sellers v. Sch. Bd.*, 141 F.3d 524, 529 (4th Cir. 1998) (alteration in original) (internal quotations omitted).   To state an actionable claim, Plaintiff must plead "bad faith or gross misjudgment." *Id.*

*Hill v. James*, No. CIV A 3:06CV470-HEH, 2006 WL 2796855, at *4 (E.D. Va. Sept. 27, 2006).

the hearing officer's decision requiring it to do so.   (ECF 4 at 10.)   Defendants' Counterclaim

further alleges that the Board of Education has failed to contract with BFLS for the provision of

ABA services as ordered.   (*Id.* at 10–11.)   There is no indication that the Board of Education's

alleged failure to contract has been remedied.   (*See* ECF 17 at 4–7.)   Furthermore, Defendants'

Section 504 and ADA counterclaims do not allege harms arising only from the Board of

Education's failure to implement the hearing officer's December 3, 2013, decision, but also from

alleged discrimination in the provision of public benefits on the basis of K.M.'s disability since

2010.   (ECF 4 at 3–9.)   Thus, Defendants' counterclaims do not appear to be moot.

Accordingly, the motion to dismiss will be **DENIED**.

### *IV. CONCLUSION*

The Court **DENIES** Plaintiff's motion to stay [ECF 6] and **DENIES** Plaintiff's motion to

dismiss [ECF 14].

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any

unrepresented party.

ENTER:        March 31, 2015

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE